UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYDELL WILSON,<br><br>             Plaintiff,<br><br>     v.<br><br>DUNG TRAN,<br><br>             Defendant. | Case No. 14-cv-00940-JSC<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT; REFERRING CASE FOR MEDIATION; STAYING CASE**<br><br>(Dkt. No. 16) |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against Dung Tran, a Santa Clara County Sheriff's Deputy who booked Plaintiff into the Santa Clara County Jail Main Jail ("jail") following Plaintiff's arrest.[1] The Court found cognizable Plaintiff's claim that Tran violated his constitutional rights by using excessive force against him. Plaintiff was ordered to notify the Court of his intent to prosecute this matter, and he has done so.

Tran has filed a motion for summary judgment. Although given an opportunity to file an opposition and cautioned about the risks of failing to do so, Plaintiff has not opposed Tran's motion. For the reasons discussed below, Tran's motion for summary judgment is DENIED.

## BACKGROUND

Plaintiff sets forth his account of the events in his verified complaint (dkt. 1, hereinafter "Compl."). He states that while he was being booked into the jail on September 8, 2012, Tran said

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 1, 15.)

to him, "I'm going to break your fucken (sic) arm, your (sic) going to feel it pop." (Compl. at 3.) Tran then twisted his left arm and hand and slammed it against a wall and the finger-printing machine. (*Id.*) In so doing, Tran broke a bone in Plaintiff's hand; the break was discovered three days later when an x-ray was taken at the Valley Medical Hospital. (*See* Attachment to Complaint.)

Tran sets forth his account in his declaration and a report he prepared following the incident. According to Tran, the San Jose police indicated that Plaintiff had not cooperated and was mentally unstable when they tried to take his fingerprints. (Rollo Decl. Exh. C.) When he arrived at the jail, Plaintiff did not cooperate with his medical examination or having his photograph taken for his identification. (*Id.*) Plaintiff was then brought to the fingerprint area where Tran was working. (Tran Decl. ¶ 4.) Plaintiff's handcuffs had to be removed in order to have his fingerprints taken. (*Id.*) Plaintiff "resisted" having his prints taken by tensing his hands and not standing up straight. (*Id.*; Rollo Decl. Exh. C.) Tran applied a "wrist lock" to Plaintiff's left hand in order to control his movements, which Tran describes as a hold that immobilizes the wrist and therefore only causes pain or injury if the inmate moves around while the wrist stays still. (Tran Decl. ¶ 4.) Plaintiff then submitted to fingerprinting, and Plaintiff was taken to a cell to be dressed in jail clothing. (Rollo Exh. C.) Tran denies threatening Plaintiff or attacking him, but states that he did tell Plaintiff to calm down and stop resisting. (Tran Decl. ¶ 4.) Plaintiff did not complain about injury during the fingerprinting process. (*Id.* ¶ 5.)

Tran has also submitted a declaration and report by Mark Roggia, the Supervisor in the booking lobby at the jail at the time of the incident. Roggia states that San Jose police had informed him that Plaintiff had not cooperated and was mentally unstable. (Roggia Decl. ¶ 2; Rollo Decl. Exh. D.) Roggia saw Plaintiff refuse to answer medical questions or look at the camera for his identification photo, and during fingerprinting Plaintiff "squirmed around and

tensed up" and disobeyed the commands of Tran and Correctional Deputy Hussain. (Rollo Decl. Exh. D.) He then saw Tran and Hussain apply control holds to each of Plaintiff's arms, but he did not hear Tran make any threats. (Roggia Decl. ¶ 2.) When Roggia spoke to Plaintiff about an hour later, Plaintiff did not complain about Tran's conduct, pain or injuries, and he also declined medical treatment. (*Id.*; Roggia Decl. ¶ 3.)

Janet Fischer, a Sherriff's Lieutenant and Watch Commander at the time of the incident, also submitted a declaration. She received a complaint from Plaintiff that Tran had used force against him while taking his fingerprints. (Fischer Decl. ¶ 2.) She investigated the complaint and located a video recording of his fingerprinting, which has been submitted as an exhibit to Defendant's motion.[2] (*Id.* ¶ 3; Rollo Decl. Exh. G.) Fisher states that based on her review of the video, Tran's use of a wrist lock complied with the policy of the Sheriff's Department. (Fisher Decl. ¶ 5.)

The video depicts Tran and two other officers escorting Plaintiff to a fingerprinting machine, with Tran holding Plaintiff's left arm, another officer holding his right arm, and another officer standing behind him. (Rollo Decl. Exh. G.) Before his prints are taken, Plaintiff spreads his arms out wide with Tran and the other officer holding them, leaves them spread apart for a short period, and then returns them to the machine. (*Id.*) The fingerprints are then taken. (*Id.*) Approximately two minutes elapse between the time Plaintiff is escorted to the fingerprinting machine and the fingerprinting begins. (*Id.*) Once the fingerprints are taken, Plaintiff loses his balance momentarily, and the officer behind him steadies him with a hand before all three guards escort him out. (*Id.*) Because the video is filmed from behind and has no sound, Plaintiff's hands and wrists cannot be seen, nor does the video show whether Plaintiff tenses up his hands, how

---

[2] There is no dispute that the video depicts the incident complained of in the complaint, that the inmate in the video is Plaintiff, or that the guard holding Plaintiff's left arm is Tran. (*See* Tran Decl. ¶ 3; Fischer Decl. ¶¶ 3-4.)

Tran holds his wrist, whether Plaintiff collapses before the fingerprints, or whether there were any threats, arguments, or verbal commands ignored. (*Id.*)

## DISCUSSION

A. **STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

B. **ANALYSIS**

The motion for summary judgment is unopposed. A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact). The Court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves

4

sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001); *see also North American Specialty Insurance Company v. Royal Surplus Lines Insurance Company*, 541 F.3d 552, 558 (5th Cir. 2008) (if no factual showing is made in opposition to a motion for summary judgment, the district court is not required to search the record sua sponte for a triable issue of fact). The verified amended complaint may be used as an opposing affidavit under Rule 56, to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as an opposing affidavit).

Plaintiff complains that Tran used excessive force against him during the fingerprinting process. The Due Process Clause of the Fourteenth Amendment protects a post-arraignment, pretrial detainee from the use of excessive force that amounts to punishment. *Graham v. Connor,* 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)). The Fourth Amendment applies to allegations of use of excessive force against pre-arraignment detainee. *Pierce v. Multnomah County, Oregon*, 76 F.3d 1032, 1043 (9th Cir. 1996). While it is clear that at the time of the incident Plaintiff was a pretrial detainee, the papers do not indicate whether he had been arraigned, and therefore whether his claim falls under the Fourth or Fourteenth Amendment. This distinction does not matter because under either Amendment, the analysis of his claim of excessive force turns on the reasonableness of the officers' actions under the circumstances. *See id*. (applying Fourth Amendment reasonableness standard to pretrial detainee's claim); *White v. Roper*, 901 F.2d 1501, 1507 (9th Cir. 1990) (substantive due process claim by pretrial detainee requires courts to balance several factors focusing on the reasonableness of the officers' actions under the circumstances). The factors that must be weighed in making this determination include: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. *White*, 901 F.3d at 1507.

Defendant asserts that there was a need for force. According to the declarations of Tran

and Roggia, Plaintiff resisted when Tran was attempting to take his fingerprints by tensing up his hands, refusing to stand up straight, and disobeying commands. The video is inconclusive as to the need for force because it does not show whether Plaintiff tensed up his hands or refused to follow any verbal commands. The video is also not clear as to why Plaintiff spread his arms out wide, or whether this defied any commands by the officers. In any event, Plaintiff does not dispute defendant's evidence that he resisted the fingerprints: he does not deny it in his complaint and he does not submit any evidence in opposition to Tran's motion. Therefore there is no genuine factual dispute that Plaintiff resisted being fingerprinted and disobeyed verbal commands.

Defendant asserts that the amount of force was warranted by Plaintiff's resistance. There is a dispute as to how much force was used, however. Plaintiff states in his verified complaint that Tran slammed his hand against a wall and against the fingerprinting machine. Tran and Roggia attest that Tran only applied a wrist lock. The video does not depict Tran slamming Plaintiff's hand against a wall, but this omission does not eliminate the possibility that he could have done so before or after the events captured on the video. The video is also inconclusive as to whether Tran slammed Plaintiff's wrist against the fingerprint machine because the guards and Plaintiff block the view of the lower part of the machine and Plaintiff's hands. As a result, there is a factual dispute as to whether the slamming took place, and the dispute is genuine insofar as it is based upon admissible sworn statements by Plaintiff. Therefore, for purposes of this motion, the Court must accept Plaintiff's account that Tran slammed his hand as true. There is, furthermore, evidence that this amount of force would have been more than necessary to obtain Plaintiff's fingerprints. The declarations of Tran, Roggia and Fischer all indicate that a wrist lock was sufficient to force Plaintiff to submit to fingerprinting.

There is no dispute about the injury Plaintiff suffered. His medical records indicate that two days after the incident, an x-ray revealed that he had a broken metacarpal bone in the base of his hand. (Rollo Decl. Exhs. I, J.) Defendant does not dispute that this injury occurred, although he does argue that it is not a serious injury. The medical records show Plaintiff's pain scale was eight out of ten two days after the incident, and that he received a splint and pain medication. (*Id.*) A fact-finder could reasonably conclude that a broken bone in his hand is a serious injury, which

1   in turn could support a finding that Tran used a significant amount of force.

2   Plaintiff's sworn statement in his complaint that Tran threatened him must be taken as true at this stage of the case, despite Tran's denial and Roggia stating he did not hear any threats. A reasonable fact-finder could conclude from Tran's statement that Plaintiff would feel his breaking arm "pop" that Tran intended to injure Plaintiff and was not in good faith simply trying to get Plaintiff to submit to fingerprints.

Based on the facts that must be assumed to be true in deciding the motion for summary judgment, a reasonable fact-finder could conclude Tran's use of force was unreasonable under either the Fourth or Fourteenth Amendment. As a result, there are triable issues of material fact as to whether Tran violated Plaintiff's constitutional rights. Tran argues that he is entitled to qualified immunity. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The triable issues of fact also preclude granting Tran qualified immunity because it would be clear to any reasonable officer that it is not reasonable, when fingerprinting a detainee who has been verbally uncooperative and then tenses up his hands for less than two minutes, to threaten to break his arm and to slam his hand against a wall and a fingerprinting machine with enough force to break a bone.

## C. MEDIATION

The Court has established a Pro Se Prisoner Mediation Program. Certain prisoner civil rights cases may be referred to a neutral Magistrate Judge for prisoner mediation proceedings. The proceedings consist of one or more conferences as determined by the mediator. As summary judgment is being denied, this case is appropriate for mediation and will be referred to the Pro Se Prisoner Mediation Program. **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (dkt. 16 ) is DENIED.

This case is REFERRED to Magistrate Judge Vadas pursuant to the Pro Se Prisoner

1  Mediation Program.  All further proceedings in this case except those related to the mediation are
2  STAYED pending completion of the mediation proceedings.
3      The mediation proceedings shall take place within 120 days of the date this order is
4  entered.  Magistrate Judge Vadas shall coordinate a time and date for a mediation proceeding with
5  all interested parties or their representatives and, within five days after the conclusion of the
6  mediation proceedings, file a report.  All mediation proceedings shall be confidential and no
7  statement made therein will be admissible in any proceedings in the case, unless the parties
8  otherwise agree.  No part of the mediation proceeding shall be reported, or otherwise recorded,
9  without the consent of the parties, except for any memorialization of a settlement.
10      The clerk shall send a copy of this order to Magistrate Judge Nandor Vadas.
11  **IT IS SO ORDERED.**
12  Dated:  June 19, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge